Good morning. May it please the Court, Jonathan Livy appearing on behalf of Appellant Paul Morales Heredia. Your Honors, despite the government's promise in the plea agreement not to seek, argue, or suggest in any way that the Court impose a sentence other than what the parties had agreed to, the government breached the plea agreement here by highlighting and providing disparaging commentary about Mr. Morales' criminal and immigration history. This Court has made clear in multiple cases that a breach occurs when the government points to past offenses that are already in the record before the Court. Specifically, in Mondragon, for example, the Court said when a prosecutor's comments do not provide the district judge with any new information or correct any factual inaccuracies, the comments could have been made for only one purpose, to influence the district court to impose a harsher sentence. There was no objection. This is one of the cases where there was no objection. No, this was fully preserved. There was a full hearing. This was fully preserved? Yes. So we had a full hearing on this matter. I'm sorry. I'm looking with the others. The various items that the government pointed to and raised in its sentencing position with the Court points out it details Mr. Morales' quote-unquote 20-year criminal history. It provides details of a 20-year-old domestic violence conviction that was, while it provides a great many details, it fails to mention it was in fact a misdemeanor. Describes Mr. Morales' history as quote, communicating a consistent disregard for both the criminal and immigration laws of the United States. That he quote, demonstrated propensity for drug trafficking and theft-related offenses which it characterized as concerning. Characterized him as quote-unquote posing a danger to the community. These are all facts that were the government's characterizations. Very negative characterizations. Well, if I agree with you, what's the remedy, given that Judge Wilson rejected the plea agreement? Well, the remedy here is actually to send it back. I mean, if in fact this Court finds that there's a breach, then Supreme Court and this Court's precedents make very clear it's automatic reversal. It doesn't matter whether the lower court was affected by it. Oh, so we don't have to make a, draw a conclusion that it influenced Judge, because, you know, I've known Judge Wilson a long time, and so we don't have to make a finding that he would have rejected it or not. Exactly. And that's the error that Judge Wilson made below. What Judge Wilson said below was, well, I'm finding there's not really a breach here because it didn't affect me. And we in fact argued below, and Judge Wilson, I think, based on the case, was absolutely wrong. It doesn't matter whether or not it affected him. What matters is whether or not there was a breach. If there's a breach and it's fully preserved, the case law requires automatic reversal. No ifs, ands, or buts. Okay. So these various, the three plea agreements that are involved in these cases have variables in them, but there's some standard language. And they all start out with a statement of criminal history of some sort. Correct. This one happens to be more inflammatory than the others, in my opinion. And it's separated quite a bit from the rationale that's offered, which is the supervised release. On the other hand, the argument that you make directed at supervised release is that in effect they shouldn't be saying anything, I gather. The problem with that that I have is that in the two following cases, as you know, the argument is made, well, the supervised release that was imposed wasn't justified. So I don't know that you can have it both ways. It does seem to me that since the district court has discretion whether or not to impose supervised release, but the guidelines or the rulings are now that you shouldn't if they're going to be imposing supervised release, if the person's going to be deported, the government seems to have a rationale that it would not be in breach of the plea agreement to provide some justification for supervised relief because it's going against the grain. So the balancing here is sort of shown by the two different kinds of cases. So that's what I'm trying to figure out. The point, therefore, is how much under your view of breach does show in any way, I think, or suggest in any way language? How much can the government put into the sentencing memo and not cross the line that you're arguing for? Well, I think they probably should limit themselves to say not very much other than the parties have stipulated to the following sentence and that based on the 3553A factors that the parties considered that this meets all of those requirements. In fact, all the language that's already in the plea agreement probably already is sufficient. There's certainly no reason to have to go into great detail, and this is what the court said, doesn't have to go into great detail with the individual's, you know, criminal history. That's already before the court. And there wouldn't be any reason why the government needs to do that. Well, let's take Heredia. Why would the government have to make those arguments? I think Heredia is the most egregious case. I would agree with that. And you did preserve the objection. But in Heredia, the plea agreement at paragraph 14 stipulates to a three-year period of supervised release. So why does the government have to argue in favor of a three-year period of supervised release when it's already stipulated to? Well, that's right. And it's in fact in all of these cases, in all fast-track cases, that's a stipulation that's reached between the parties. So it's in each of the three plea agreements. In all of the plea agreements. And so the government's post hoc justification that they needed to put these facts before the judge in order to get the three-year period of supervised release is just flat-out wrong, since it was stipulated to and you would get the three years if the judge approved the plea agreement. Well, that's right. In all three of the cases before us, in fact in all of the cases where this comes up, the government uses in the supervised release section that the defendant poses a danger to the community. And this is why we need the three years of supervised release. But of course, putting it in one section of the sentencing position under, you know, supervised release doesn't mean the judge doesn't also see that when the judge is reviewing everything. Now, here in this case, of course, and I agree, much more egregious than the others. And all those facts are also in the pre-sentence report as well. That's correct. And the judge, we presume the judge, well, the judge has to say as part of the sentencing that he's read the pre-sentence report. Correct. And in Mr. Morrell's case, here the government actually had all of these disparaging comments from the very beginning of their sentencing position. This was not limited to the section on supervised release. And we're dealing here with a sentence where the binding sentence was to be six months. Six months. You don't need to detail a 20-year criminal history, go through details of the domestic violence conviction, describing all of these very negative things about the defendant when they've agreed to six months. But then the judge says, look, it doesn't make any difference. That's what I would give him anyway. And you want us to reverse the district. What's the judge supposed to do at that point? Well, what the case law requires, what the Supreme Court said in Santabello said in Puckett, what this Court has said in a number of cases. Just tell me what. Oh, it has to be remanded to a different sentence, to a different judge. No, no, no. You didn't hear my question. I apologize, Your Honor. The question I asked. Listen to the question. So Judge Wilson hears the objection, and he says, it doesn't make any difference to me. You want us to reverse. You want us to find error in what the district judge did. And I'm asking you, what was a district judge supposed to do at that point? Well, it was supposed to send it to a different judge. What the case. I'm sorry. He was supposed to recuse himself? Absolutely. What the court, what the case law requires is that when there has been a breach of the plea agreement, at that point it's not. And the case law says it's not the judge's fault at that point. And they recognize it's not the judge's fault. It's the government's fault. But what the case law requires is that at that point, if the government has breached the plea agreement and it's been preserved, it must then be sent to a different judge. That that judge is disqualified from considering the case any further. And so what the case law says, if it comes then on appeal, the Court is required to vacate and send it back to a different judge. Did you ask Judge Wilson to recuse himself? The word recusal wasn't made. What the argument was, was that it does have to be sent to a different judge. You didn't make that argument. Yes, Your Honor. That argument was made below. This was a very extensive briefing, very extensive hearing, after which the Court took it under submission. And then, well, actually, I believe he did rule at the hearing and then later issued a written ruling and said, look, it didn't affect me. So I'm going to continue with the case. So I have a question about how this works in practice. So with the fast-track plea agreements, so when do you – are they agreed upon and then sent to the judge and the judge is assigned or is the judge assigned to the case before the fast-track plea is entered? I guess technically the judge is assigned before. I mean, the process is such that it can – it all happens very quickly. So when the indictments file and they're arraigned, is that before the magistrate judge's trial? It would not be an indictment. These cases all typically involve informations where the parties have agreed to beforehand and that goes to the magistrate judge. I believe in one of these cases the plea was entered at the post-indictment arraignment before the assigned district judge. And what's the incentive for defendants to enter into these fast-track agreements? That they're getting a binding stipulated sentence and they typically get a downward departure for early disposition, which was four levels in Mr. Morales-Reddy's case and was two levels in the other two cases we're going to discuss this morning. But what they're getting on the supervised release is an aberration in the other direction, because normally they would not be subject to supervised release. So that's why I'm concerned about the part of your argument that says the government doesn't have to – shouldn't be putting anything in, because it's cutting in the opposite direction. And if the court decides in its judgment that it will follow the general rule of when somebody is being deported, you don't impose supervised release. They have to – there they have to justify it, because it's not a downward. It's a contrary to the guideline or to the rule. It's contrary to the theory. It's their theory. The fact is, since the guidelines were amended in 2011, the guidelines recommend that if the individual is deportable, that the court not impose supervised release. In practice, at least in the central district, supervision gets imposed still in every case, whether it's a fast-track case or a non-fast-track case. I'm aware of one case since the guidelines were amended in which the court did not impose a term of supervision. It's very normal for the three years to be imposed. Thank you. Your time is up. Thank you. Good morning, Your Honors. May it please the Court. Ashley Aul for the United States. Speaking about all three cases just very briefly, I think in none of these cases did the government breach the plea agreement under any standard of review, because under this Court's implied breach case law, it can't be said that there was, quote, no purpose for the government's statements other than to urge a sentence other than the sentence that the government had agreed to recommend. It can be said. It has been said. And it may be up to us to decide whether to say, but it can be said that there was no other purpose. It's been argued, obviously. I didn't hear the rest of his question. I didn't hear your question, Judge Fischer. What was your question? The question was responding to counsel's argument. It can't be said that there was no other purpose. It has been argued, Your Honor. Yes. I think turning to the first case, I think there's a few justifications, only a few of which have been touched upon. And I think supervised release is one of them. In this case, the party stipulated to, but had to convince the court to adopt. I don't think Judge Wilson would require much convincing. I mean, given how he sentenced, as it was. To start with a factual correction, in most of these cases, the parties don't know who the judge is at the time they enter the fast-track agreement. The way the process works is that when the defendant initially appears, when there's been a complaint, they're handed a packet that includes a fast-track agreement, as well as a waiver to put off pre-indictment arraignment for 30 days. Right. And that supports my suspicion that generally the U.S. attorney probably is going to stick to the agreement and to not suggest. I mean, the agreement's very broad. I mean, you've read it, right? What does it suggest, seek, imply? I believe it's seek, argue, or suggest. Seek, argue, or suggest. In any way. In any way, yes. It's incredibly broad. In any way. And in the Heredia case, certainly, in any way, that's what the government did. And I guess what I'm just wondering is maybe, I don't know, it's just a suspicion I have because I'm very well acquainted with the judges on the central district. And I'm just wondering if you wait and see which judge you have, and then maybe make that kind of argument that would influence a judge to reject the fast-track plea agreement. And maybe there's some judges, in fact, I think Judge Wilson himself, in another case I had earlier this year, he had an express policy of not ever accepting fast-track pleas. Are you aware of that? There is actually a Ninth Circuit case that found that. I think I was on that panel. It stopped in 2010, however. Well, he said he was going to stop doing it. But let me see what happens with this one. I realize he, at one point, made a statement that he was going to reject them all. And then after we did that opinion, he said he was going to start accepting them. I don't know when this case was. I know, as a matter of fact, Your Honor, that Judge Wilson does no longer adhere to that policy. In another recent case I briefed, I actually put a list together of all. Isn't he in private practice now? Judge Wilson? No, he's not, Your Honor. He's still on the bench. He's still on the bench. I think there's a couple of things about the comments. I see you're Judge Matz. I'm sorry. That's right. Judge Matz is in private practice. In this first case, I think the import of the Rule 11C1C aspect of this case really does deserve some attention. And it's that ex ante, the parties have to convince the judge to accept this agreement. And judges in the central district reject them and go both ways. They go above and they go below. I believe Judge Wilson has rejected and gone both above and below. And to go outside of the record in this case and to the others a bit, I don't think either party is attempting to encourage a breach. I don't think either party really has any real interest in encouraging a breach, given the various commitments in the plea agreement. And because if the court doesn't accept the Rule 11 agreement, all bets are off. There's no appeal waiver. There's no downward departure. There's no agreement about supervised release. But you will agree that it behooves the government for the district judge to go higher, right? I would disagree, Your Honor. I guess what happens at that point, the defendant has a chance to back out. Right. Exactly. So if the court rejects the plea agreement, the defendant need not stick to his guilty plea. The defendant can withdraw. And at that point in this district, if the defendant does enter a guilty plea, it ends up being an open plea, typically. So that's to say there's no commitments about sentence, but there's also no appeal waiver. I think the defendant has a real lot to lose because these fast-track pleas give them immense benefit. And at the same time, they're very efficient for the government, and they save the government a lot of resources. And so both parties have an interest that the defendant has a liberty interest and the government doesn't. I don't know that I totally agree with that, Your Honor. And I think to look at actually ---- No, I'm not asking you to agree with me. I'm just asking you to give me an argument why I'm wrong. I think to look at the sentencing memoranda that were actually submitted by defendants in the other two cases, I think give a sort of more fair global view of how these proceedings typically go. And I think both parties submit sentencing papers that argue for the acceptance of the Rule 11 agreement and for the sentence therein based on factors under 3553A that tend to be kind of within their ken. Okay. You're drifting from the case at hand, and I understand why. But let's come back because you said basically you think both sides are trying to argue for the sentence agreed to. That's right. Okay. So in this case, the sentence agreed to was six months with a standard three-year supervised release. And in the first page of AR-51, or ER-51, you recite, the memo recites that removals occurred subsequent to his conviction for an aggravated felony, possession of the sale of heroin. And then the next paragraph goes on and says, defendant's 20-year criminal history also includes a 1992 conviction for sale or transportation of heroin, 1993 conviction for possession of heroin. In the commission of the latter offense, defendant was arrested with 56 balloons filled with over nine grams of heroin. Additionally, in 1995, defendant was convicted of corporeal injury on a spouse following an incident in which he allegedly choked the mother of his then-infant daughter, grabbed her face, shook her vigorously, shoved her against a wall, and cut her lip. And then goes on to talk about a conviction receiving stolen property, a 2011 conviction for commercial burglary. Indeed, defendant's history communicates a consistent disregard for both the criminal and immigration laws of the United States. If that isn't overkill for justifying a six-month stipulated sentence, I don't know what is. Because if that doesn't suggest in any way that the sentence is way too low, it certainly doesn't sound like a recommendation to any district judge who's likely to say, well, you know, six months isn't enough. I think there are two responses. Or is too low. One that's factual and one that's legal. And the factual one is, of course, that the government does have to argue for the propriety of the sentence. That's what I'm focused on. What is the necessity of all that detail in the domestic violence to justify a six-month sentence? I mean, I think in this case the sentence is six months plus a stat max term of supervised release. Yes. And so that sentence So that's what this is all going to, is supervised release? I mean, I think it goes to the propriety of the sentence and largely to having to find supervised release. Yes. And the supervised release comes up at what I'm reading for is page 52. And the supervised release comes back later in the memo under a different heading and says, in this case the court should consider a three-year term of supervised release since defendant poses a danger to the community because of his criminal history and includes both drug traffic and battery. That's right, Your Honor. Why wouldn't that have been sufficient? I mean, I think the section that Your Honor was reading for before is the background section. I know, background. It loads up the description of how bad a person this is. I don't think And you're saying that that wasn't justified by the six-month term? You're saying it was justified by supervised release? I think the primary argument we've made is supervised release, but I think, again, the Rule 11 aspect of the I want to make sure you understood my question and your answer. You're saying that the detail about the battery was to support supervised release? I think not only supervised release, Your Honor, but I would agree that in this case, given the stat max nature of the supervised release and the relatively shorter period of incarceration, that there was more argument necessary to justify the supervised release. Well, now, you get the U.S. attorney and the defense attorney both get the pre-sentence report before 30 days at least, or 45 days, I think, before the sentencing hearing, right? Yes. So you're privy to what the probation office is recommending? Yes. Not always their recommendation, but their analysis of the facts. Well, but you know that their analysis is what they recommend, right? Sometimes the actual letter, there's a separate letter at the back that is sometimes separate. Do you remember I was a district court judge? I actually remember that, and I've actually sentenced many times since then. I'm still designated as a district court judge. So, yes, I recognize you don't get the actual letter, but you see everything that's in the pre-sentence report. Absolutely. And let's look at this specific case again. In this case, when the defendant moved for specific performance of the plea agreement and the district court judge ruled against the defendant, the district court judge said, I base my sentence on my independent review of the pre-sentence report. And I would suspect most judges are going to say that in response to a specific performance motion. Why can't the U.S. Attorney's Office just let it rest with the stipulation and the pre-sentence report? Why does the U.S. Attorney have to add anything at all, especially when in this heredia they recommended the three years supervised release? I think the government does have an obligation to argue for the sentence that it believes is appropriate. And I don't think there's anything I think more importantly in the plea agreement that bars them from arguing in addition to it says they have to recommend. In fact, you're obligated affirmatively to recommend in the plea agreement. That's fine, but I don't see how in heredia, I guess like Judge Fischer, I don't see how what the U.S. Attorney argued supports a six-month sentence, especially when the U.S. Attorney is well aware that the probation officer in its thing has recommended a sentence between 15 to 21 months. I think there's another legal question that's sort of lurking behind this also, which is the idea under Mondragon that by referring to something that's already in the record, that tends to show an intent to influence improperly. And I think Mondragon is actually distinguishable on that point. In Mondragon, the agreement was not to make any recommendation at all. The government obligated itself to make no sentencing recommendation. And then what the government did was articulate various things in a way that seemed to be a recommendation. And the court held that under the circumstances there, given I think it was a totality analysis, frankly, given the nature of the plea agreement, given the nature of what was said, and given the fact that these references were redundant, there was no other way to see those comments except as a recommendation because it was already in the record and the government was obligated not to do that. Here the government was obligated. There must have been another way because the government argued the other way, Mondragon. There was another way. The court disagreed. I mean, the language of Mondragon that is picked up in Whitney and then distinguished in Ellis and other cases is that there was ultimately no purpose found for the comments except to argue for a higher sentence. That's consistently held in each of those cases. I doubt that's really a standard. I mean, they may have been simply finding in that case. I'm not sure that. I mean, you started out by saying there was a purpose here, but I'm not sure that's the case anyway. Tell me, what's a special assistant United States attorney? A special assistant United States attorney is an attorney who is on loan, either from another government agency or, frankly, in some case, private practice that is still being used. Or sometimes a DA, right? Sometimes a DA, that's right. In this case, Mr. Walker is an ICE attorney, and Mr. Left, who's at issue in the latter two cases, was also an ICE attorney, and both of them are now back at ICE. Maybe this is a case of incomplete supervision by the United States attorney of people who are really not part of the staff. Maybe that was a little overboard, just a little slimy, whether or not you think, you know, we wind up ruling one way or the other. It does not heighten my respect for the United States attorney's office or the United States attorney himself or the people in the line who signed the agreement and signed off on this. It's not honorable. It does not seem the kind of thing that I would want my government doing when it enters into an agreement with people. Maybe this is an occasion for the United States attorney to look at these things. Whatever we do in this case, if you're going to be doing these fast-track agreements, you're going to be signing these things. Nobody says you have to agree to this broad language, but that's the language that attracts people to accept the agreements. Then maybe, you know, this is the government. This is sovereign. We do justice, not simply win cases, right? And this just doesn't, you know, I know you're here as an advocate. You're defending your client. But maybe as a matter of policy in the office, the line shouldn't be cut that close. And why don't you take this back to the U.S. attorney? This is a chance to consider the issue. Andre Barat still? Yes, Your Honor. He hasn't been confirmed yet? Not yet. He'll be on the other side soon. Right. I suspect so. Can I bring you back in the same spirit to paragraph 16, which is really what this case is focused on, which is the promise that the government made, which is, the parties agree they will recommend that the court impose the sentence set forth above. Okay, that's your argument might have some traction, although I have to say in this particular one I'm not persuaded, but might have some traction. If it didn't then go on and make such an explicit statement that they will not seek, argue, or suggest in any way. This is contract language. And I've done a lot of contracts in civil practice. And you construe contracts, and our law is you can construe them strictly against the government in this because you're the performing or non-performing party here. Suggest in any way, either orally and in writing, that any other specific offense characteristics, adjustments, departures, variances, and so on be imposed. And I don't know how the office is interpreting the intent of that language. But if you're going to sign a contract that includes such a sweeping limitation on what you're allowed to say, then when you slide around it, whoever drafted this and approved it, slides around it, you're exposing yourself to lack of credibility. It looks like an end run. It looks disingenuous. And you're holding that out as a promise. And presumably the government gets a benefit from these because you get appeal waivers and you don't have to go through the prosecution and the like. So I would assume that when you draft language, when the office is drafting language, as Chief Judge Kaczynski suggests, I think you ought to all take a look carefully as a matter of contract law as well as your policy concerns because you're the ones that are in the repetitive position of proffering these. Fortunately, there's the Federal Public Defender's Office, which, of course, is experienced with them too. But a lot of these cases are one-offs for some of these defendants. We don't know who their attorneys are and how much experience they have, so we prefer not to get involved in these disputes. Okay? Yes, Your Honor.  Thank you, Your Honor.
judges: Kozinski, Wardlaw, Fisher